UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 05-60 ML |
| | : | |
| JUAN JUSINO | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Juan Jusino ("Defendant") is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, a hearing was conducted on February 5, 2008. At that time, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms of his supervised release. Based on that admission, I find that Defendant has violated supervised release. For the reasons stated herein, I recommend that Defendant be sentenced to six (6) months imprisonment with no further period of supervised release and that he be ordered to pay his $100.00 special assessment.

**Facts and Travel**

On August 15, 2005, Defendant appeared before U.S. District (now Chief) Judge Mary M. Lisi after pleading guilty to a one count information charging Defendant with intentionally using a communications facility (a cellular telephone) to facilitate the commission of a violation of 21 U.S.C. §§ 841 and 846 (conspiracy to distribute and to possess with intent to distribute cocaine base), a class E felony. Defendant was sentenced to thirty-three (33) months imprisonment with one year of supervised release to

follow. As special conditions of supervision, Defendant was ordered to participate in and satisfactorily complete a substance abuse treatment program and a mental health treatment program. He was also ordered to pay a special assessment of $100.00. Supervised release commenced on May 9, 2007, with an expiration date of May 8, 2008.

On August 9, 2007, Chief Judge Lisi ordered the issuance of an arrest warrant for Defendant after receiving a Petition for Warrant for Offender under Supervision ("Petition") filed by the United States Probation Department ("Probation Department"). The Petition alleged that Defendant had violated the conditions of his supervised release.[1] Defendant was arrested on the warrant, and on August 17, 2007, he and his attorney, Thomas G. Briody ("Attorney Briody"), appeared before U.S. Magistrate Judge Lincoln D. Almond. After being advised of the grounds for the alleged violation, Defendant waived a violation hearing and admitted to the violations alleged in the Petition.

Because all parties were agreeable to a modification of Defendant's supervised release by the addition of a term of community confinement, Judge Almond forwarded an order for such modification to Chief Judge Lisi for her signature. On August 20, 2007, Judge Lisi signed the Order (Document ("Doc.") #13), amending the conditions of Defendant's supervised release to include the requirement that he participate in a community confinement program at the Coolidge House Comprehensive Sanctions Center in Boston, Massachusetts, for a period of six months. The Order was subsequently amended twice to adjust the period

[1] The particular conditions of supervised release which Defendant was alleged to have violated and the factual basis for each violation are set forth on pages 4-6 of this Report and Recommendation. The condition that Defendant reside at the Coolidge House, however, was not among the violations alleged in the Petition which was filed in August of 2007. That condition of supervised release had not yet been imposed.

that Defendant was required to reside at the Coolidge House. See Docs. #14 and #15. The adjustments were made because a lack of bed space prevented Defendant from entering the facility immediately, and he was being detained pending an opening there. The last Amended Order (Doc. #15), which was issued on September 26, 2007, stated that Defendant was to reside at the Coolidge House from October 9, 2007, until February 16, 2008, and comply with all rules and staff instructions.

On November 23, 2007, Senior U.S. Probation Officer Brian Pletcher ("U.S.P.O. Pletcher") initiated an Amended Petition for Warrant for Offender under Supervision (the "Amended Petition"), re-alleging that Defendant had violated the conditions of his supervised release in the manner stated in the original Petition and adding a new violation that Defendant had absconded from the Coolidge House. See Amended Petition at 1-2. In response to the Amended Petition, this Magistrate Judge ordered the issuance of an arrest warrant. See id. at 3. Defendant was subsequently arrested on the warrant, and on February 5, 2008, he appeared with Attorney Briody before this Magistrate Judge. After being advised of the contents of the Amended Petition and of his right to have a violation hearing, Defendant, both personally and through counsel, waived a violation hearing and admitted to the violation that he had absconded from the Coolidge House.[2] This admission satisfied the Court that there was an adequate basis for finding that Defendant had violated the conditions of supervision. After receiving sentencing recommendations from both the Government and the defense and also hearing from Defendant personally, the Court stated that it would take the matter under advisement and issue a report and recommendation.

[2] Defendant had already waived a hearing and admitted to the older violations when he appeared before Judge Almond on August 17, 2007.

This is that Report and Recommendation.

**The Violation**

The Amended Petition alleges that Defendant has violated the following conditions of his supervised release in the manner specified:

**Condition #3: Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

On June 21, 2007, Defendant reported to the probation office for drug testing and submitted a specimen which tested positive for THC. He was verbally instructed by the probation officer to report on Monday, June 25, 2007, for referral to a drug treatment facility and drug testing. Defendant failed to report as instructed and did not call to cancel or reschedule the appointment.

On July 17, 2007, U.S.P.O. Pletcher hand-delivered a letter to Defendant, informing him that he was in violation of his conditions of release and instructing him to report to the probation office every Wednesday and to participate in treatment programs at Fellowship Health Resources and the Providence Community Action Drug Treatment Program. U.S.P.O. Pletcher also orally communicated the same information and instructions to Defendant. Defendant failed to report to the probation office on August 1, 2007, and failed to participate in the treatment as directed in the letter.

**Special Condition: Defendant shall participate as directed in a program of mental health treatment approved by the probation office.**

Defendant failed to report for mental health treatment appointments at Fellowship Health Resources on June 6, June 20, and July 9, 2007, and did not call the clinician or U.S.P.O. Pletcher to reschedule or cancel the appointments.

**Special Condition: Defendant shall participate as directed in a program of substance abuse treatment approved by the probation office.**

Defendant failed to report for substance abuse treatment on August 6, 2007, and did not call the clinician or U.S.P.O. Pletcher to reschedule or cancel the appointment. As to this violation, Defendant reported to the probation office on July 26, 2007, and an intake appointment was set up with the Providence Community Action Program for July 30, 2007. Defendant attended the intake appointment and a counseling appointment was set for August 6, 2007, at 10:00 a.m. On that date, the drug treatment facility contacted the probation office and advised that Defendant had failed to appear for his drug treatment appointment.

**Special Condition: Defendant shall participate in an outpatient program approved by the probation office for substance abuse, which program may include testing to determine whether Defendant has reverted to the use of drugs or alcohol.**

As to this violation, on May 15, 2007, Defendant was entered in the Color-Code Random Urinalysis program and was assigned the color red (approximately one test per week). Defendant failed to report for random drug testing as required on May 30, June 12, June 25, July 6, July 11, July 30, and August 1, 2007, and did not call U.S.P.O. Pletcher to reschedule the appointments.

**Mandatory Condition: Defendant shall refrain from any unlawful use of a controlled substance.**

On June 21, 2007, Defendant reported to the probation office and submitted a urine sample which was positive for THC (marijuana) by the test cup method. Defendant admitted that he used marijuana earlier in the week. Defendant was referred for treatment at the Providence Community Action Drug Treatment Program but failed to report for a treatment appointment on

August 6, 2007.

**Special Condition: Defendant shall reside at and participate in a community confinement program at the Coolidge House Comprehensive Sanctions Center from October 9, 2007, until February 16, 2008, and shall comply with all staff instructions relevant to said program.**

On November 23, 2007, U.S.P.O. Pletcher was advised that Defendant had absconded from the Coolidge House on November 22, 2007, and that he had been expelled from the program. According to information provided by the Coolidge House, Defendant had requested leave on November 22, 2007, to go to work at "M&M Step-in-Style Apparel" located at 1920 Westminster Street, Providence, Rhode Island. Prior to his departure, the Coolidge House staff called Defendant's employer and verified that he was scheduled to work. Defendant signed out from the Coolidge House at 10:45 a.m. and was scheduled to return at 10:00 p.m. At 1:10 p.m., Defendant called from work and reported that he had arrived. At 8:48 p.m., Defendant called the Coolidge House and reported that he had missed his train and would not depart Providence until 10:00 p.m. As a result, he would not arrive at Boston's Back Bay Station until approximately 11:00 p.m. Accordingly, his return time was amended by the Coolidge House staff to 11:15 p.m. However, Defendant did not return, and he did not call U.S.P.O. Pletcher or the Coolidge House to report his status. As such, he violated staff instructions and was expelled from the Coolidge House. Defendant was classified as an absconder.

## Law

### Statutory Provisions

Section 3583(e)(2) of Title 18 of the United States Code ("U.S.C.") provides that if the court finds a defendant to be a violator of the conditions of supervised release, the court may extend the term of supervised release if less than the maximum

authorized term was previously imposed and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Fed. R. Crim. P. relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. In this case the maximum term of supervised release has already been imposed. Therefore, supervised release cannot be extended.

Pursuant to § 3583(e)(3) of Title 18 of the U.S.C., the court may, after considering certain statutory factors set forth in § 3553(a), revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Fed. R. Crim. P. applicable to revocation of supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. However, a defendant whose term is revoked under this paragraph may not be required to serve more than one year in prison if the offense was a class E felony. In this case, Defendant was on supervision for a class E felony. Therefore, he may not be required to serve more than one year imprisonment upon revocation.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such term of supervised release shall not exceed the term of

supervised release authorized by statute for the offense that resulted in the original term of supervised release (here one year), less any term of imprisonment imposed upon revocation of supervised release.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense,[3] or (iii) involves possession of a firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation. Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade. In this case, Defendant has committed a Grade C

---

[3] The term "controlled substance offense" is defined in §4B1.2(b) of the U.S.S.G.

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. §4B1.2(b).

violation.

Pursuant to §7B1.3(a)(1) of the U.S.S.G., upon a finding of a Grade A or B violation, the court shall revoke supervised release. Section 7B1.3(a)(2) states that, upon a finding of a Grade C violation, the court may revoke or extend supervised release or modify the conditions of supervision. In this case, Defendant has committed a Grade C violation, and the statutory maximum term of supervised release has already been imposed. Therefore, the Court may not extend supervision, but may revoke or modify supervision.

Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(1) states that where the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e) for any portion of the minimum term. Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(2) states that where the minimum term of imprisonment determined under §7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. The first provision, which allows for alternatives for any portion of the minimum term, applies to this matter.

According to §7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement

previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under §7B1.4. In this case, there is no outstanding restitution, fine, community confinement, home detention, or intermittent confinement. However, the full balance of the $100.00 special assessment is still outstanding.

Section 7B1.3(g)(2) of the U.S.S.G. provides that where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. See id. (citing 18 U.S.C. § 3583(h)). In this case, the authorized statutory maximum term of supervised release is one year. There has not been any term of imprisonment previously imposed for violations of supervised release. Therefore, the Court may impose the above-noted statutory maximum, minus the term of imprisonment that is to be imposed for this revocation.

Pursuant to §7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of IV at the time of sentencing. The Revocation Table contained in §7B1.4(a) of the U.S.S.G. provides that, for a Grade C violation with a criminal history category of IV, an imprisonment range of 6 to 12

months is warranted.[4]

Section 7B1.5(b) of the U.S.S.G. states that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered for time previously served on post-release supervision.

## Disposition

**Recommendation by Government**

Assistant United States Attorney Mary Rogers recommended that Defendant receive a sentence of eight months imprisonment with credit for the time he was held while awaiting an opening at the Coolidge House (approximately two months). She also recommended that there be no further period of supervision for Defendant and that he be ordered to pay the outstanding $100.00 special assessment.

**Recommendation by Defense**

Attorney Briody requested that the Court consider imposing a sentence of three or four months with no further period of supervised release. He noted that Defendant was employed and that this was a positive circumstance which should be considered. Attorney Briody also presented a letter from Defendant's employer, Beneficial Energy Products, Inc., which is located in Pawtucket, Rhode Island. The letter stated that Defendant had been working at the business since January 17, 2008, that he has been a good employee, and that if Defendant is eligible to work, he will still have employment with the company. See Defendant's Exhibit A.

Defendant was given the opportunity to address the Court. He stated that his aunt had died while he was at the Coolidge

---

[4] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

House and that he had been denied permission to attend her wake and funeral in New York. He also noted that he has family responsibilities, including two children, and that he has held down a job for the first time in his life.

**Court's Recommendation**

Weighing in favor of the Government's recommendation is the fact that Defendant has admitted to multiple violations of the conditions of his supervised release. His non-compliant behavior extended over a period of months, and he repeatedly disregarded instructions by his probation officer. This circumstance elevates the importance of deterrence in determining the appropriate sentence. Supervised release will not be effective if defendants believe that they can ignore instructions from their probation officer without suffering significant consequences.

The Court is also strongly influenced by the fact that the modification which was made to the conditions of Defendant's supervised release following his admission of violation before Judge Almond was clearly an attempt to give the Defendant a final opportunity to demonstrate that he could comply with the conditions of supervision. By failing to return to the Coolidge House, Defendant in effect threw away his last chance to avoid being incarcerated for the violations which he had admitted before Judge Almond. The failure to return also constituted another violation of the conditions of supervised release for which an additional penalty is warranted.

These considerations favor a sentence of the length recommended by the Government. They are partially offset by the following circumstances. While Defendant has been unable to comply with the conditions of supervised release, he has not been charged with any new criminal activity. He recently obtained employment and for the brief period he has been employed his

employer considers him to be a good employee. Because employment is something to be encouraged, imposing a lesser sentence based on the letter from Defendant's employer may have a beneficial effect on Defendant's long term rehabilitation. Hopefully, it will reinforce in Defendant's mind the importance and value of productive work.

Defendant also waived a violation hearing before both Magistrate Judge Almond and this Magistrate Judge. While the waiver and admission before Judge Almond does not warrant any further consideration,[5] his waiver and admission before this Magistrate Judge spared the Court and the Government from having to conduct a violation hearing regarding the most recent violation. It is this Magistrate Judge's practice to take into consideration a defendant's waiver of hearing and admission by making a slight reduction in the sentence which would otherwise be recommended for the violation.

After consideration, the Court concludes that these positive circumstances are adequately addressed by reducing by two months the sentence recommended by the Government. In all other respects, I find the recommendation made by the Government to be appropriate.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be sentenced to six months (6) imprisonment and that there be no further period of supervised release. I further recommend that he receive credit for the time spent in detention pending an opening at the Coolidge House and that he be ordered

[5] Defendant has already received that consideration by virtue of Judge Almond's decision to recommend that Defendant's condition of supervision be modified instead of recommending that Defendant's supervised release be revoked.

to pay the $100.00 special assessment.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
February 8, 2008